is number 19-1948 Sarasota Wine Market versus Schmitt. Mr. Epstein. May it please the court my name is Robert Epstein. I'm an attorney in Indianapolis and I represent all of the plaintiffs in this case. In light of Tennessee Wine v. Thomas this case should be remanded for a concrete finding of fact. District Court Autry followed the plaintiff's claim concerns only the retail tier of Missouri's liquor control system. It is foreclosed by the bright line between the producer tier and the rest of the system described in Southern Wine. Plaintiff's main intentions are as follows. First, Southern Wine is no longer good law. The district court is dismissed based on Southern Wine's bright line holding that the non-discrimination principle applied only to producers not retailers or wholesalers. This is no longer good law. Tennessee Wine stated there is no basis for the distinction between and among the three tiers. Secondly, Missouri's residency rule is unconstitutional under Tennessee Wine. Missouri has the same residency rule as the one that was struck down in Tennessee Wine. So it must be remanded at least on that issue. This rule requires a retailer to be a qualified voter and taxpaying citizen of Missouri. Third, physical presence rules are unconstitutional under Granholm. Granholm said states cannot require physical presence. It discriminates against interstate commerce by definition. If each state required it, no retailer could sell in more than one state and interstate commerce would be shut down. Discrimination can only be upheld if the state proves it serves a public purpose that could not be advanced by non-discriminatory alternatives which require a record. There is no record in this case. This was decided on a motion to dismiss. The conclusion in Southern Granholm to the producer tier was foreclosed by Tennessee Wine and Spirits. That decision clarified Granholm which determined that discrimination in wine shipping between in-state and out-of-state wineries was unconstitutional. The Tennessee Wine Court said Granholm never said that its reading of the Commerce Clause analysis was limited to discrimination against products or the dormant Commerce Clause prohibits discrimination against all out-of-state interests. The Supreme Court in Tennessee Wine, in finding that a two-year residency requirement was unconstitutional, went on to say, and I quote, under the dormant Commerce Clause cases, a state law that discriminates against out-of-state goods or non-resident economic actors can be legitimate local purpose. It is clear that this holding in Tennessee Wine applies here. Missouri residents and physical presidents requirements discriminates against an out-of-state actor such as my client Sarasota Wine Market. In its ruling, the Supreme Court in Tennessee rejected the association's argument that the Granholm non-discrimination principle was limited to wineries, that is producers. It indicated that although Granholm only involved discrimination against the wineries in Michigan and New York, the principle of Granholm applies to all levels of the three-tier system. That is what we have here. This case involves discriminatory treatment in favor of the in-state retailers into the detriment of out-of-state retailers such as Sarasota Market. The only logical purpose for this is economic protectionism, which Tennessee spoke out against, as did other cases including Bacchus in 1984. Because Missouri is limiting interstate commerce by its laws, some history of the Commerce Clause may be helpful. Let's start with the Federalist because Sarasota Market and Heathcourt have no desire to open a location in Missouri. They want to simply to engage in internet sales and there is no license available based on the residency requirement in the statute. If you recall back in Granholm, we had Michigan and New York where wineries did not want to necessarily obtain a Michigan or New York license particularly, but rather to be able to ship wine there. However, Sarasota Market has indicated that it would apply for a license if one was available in Missouri, but none appears to be currently. But they would only apply if it was a state tax. They're willing to comply but they're not willing to develop a physical presence like Total Wine would or Walmart or whatever. They would like to be able to ship from their state to Missourians just as happens in about 15 other states plus the District of Columbia. There are now 15 states that allow out-of-state direct shipping to consumers. So that's what they would like to be able to do. So again if I may go back to my Federalist analogy, Hamilton and Madison were very much in favor of a unified economic union. They saw it failure in the Articles of Confederation which need to be addressed. So Madison in Federalist 42 addresses this very eloquently by saying we have to have a national commercial union. It is my opinion that if Madison and Hamilton were alive today they would vote for the plaintiffs and ask that this case be remanded in order to develop a factual record which has never happened. Also a little background is to the retail market. Currently there are 400,000 retailers, wine retailers in the United States including Walmart, Walgreens, CVS and the like. Of that total number in the in the country there are only about 2,000 specialty retailers that rely on the internet. So if someone is looking for an anniversary wine, a birthday wine in their year of their birth or a hard to find wine, they have to rely on a search engine such as winesearcher.com. I did a little experiment by looking for certain vintages of Chateau Latour, a very well-known French Bordeaux. I looked up for my own birth year which is 1944 as well as Latour for 1940, 1951 and 1959. I was able to locate these wines and specialty wine shops throughout the country and also abroad but could find none in the state of Missouri. This points out the conundrum that my consumer clients find themselves in and it applies not only to the consumer plainness but also to Missourians that live in small towns outside of the major cities because even the large cities in Missouri you will find a very limited supply of wine available to the wine consumer. There are two recent cases from other jurisdictions which have very similar fact patterns that I would like to bring to everyone's attention. The first is the Leveloff case which is the Seventh Circuit case where the Illinois regulatory system... Are these in your briefs, Counselor? These cases, are they... Leveloff is in our brief, yes. B-21 versus Guy is not. That's the North Carolina case which just came down. Please provide a 28-J letter with that citation then. We certainly will, Judge Lohmann. Thank you. Oh, I think we did already provide that letter on B-21 but anyway the first one is Leveloff which is the Seventh Circuit case and in reversing the motion to dismiss by the and I quote, the plaintiffs have successfully alleged a violation of the Dormant Commerce Clause and on the pleadings the 21st Amendment does not bar their challenge. The Commerce Clause claim should be therefore not have been dismissed. The second case is B-21 v. Guy which again presented a very similar fact pattern as we have here. In denying the state of North Carolina's motion to state laws that discriminate against interstate commerce violate the Commerce Clause and are not permissible under the 21st Amendment, citing Granholm. There are also two Eighth Circuit cases that restate the non-discrimination principle and these are North Dakota, the Heidinger and Alexis Bailey Vineyard case which came out of Minnesota and did involve wine as it turns out. Are they in your brief, counsel? No, they're not and we will give you a letter on both of those cases. I assume you disagree with Judge Sutton's Sixth Circuit decision. We do disagree with the Sixth Circuit decision but the big difference is there was a factual record in that case. Here we have not. So at least we wish to be given the opportunity to develop a factual record then see where both sides are. We feel that the case should be remanded. We should state Missouri should be required to prove by concrete evidence why the plaintiff's claims are not valid. So I will reserve the rest of my time for rebuttal and I thank you unless you have some further questions. Well I was... do you think the proper test here is what was stated in Granholm? Granholm? The burden is on the state to show that the discrimination is demonstrably justified. State regulation that discriminates against commerce is upheld only after finding based on a concrete record evidence that a state's non-discriminatory alternative will prove unworkable. That's Granholm. That's a 544 U.S. at 492 to 493. Is that the test that you're advocating? Certainly one of the tests as well as... One of the tests? What else? Will you want us to go beyond this? That is the test, Judge Logan. Pardon? That is the test. Thank you. Mr. Bluestone. Good morning and may it please the court. My name is Zach Bluestone and I'm appearing today as a Special Assistant Attorney General on State of Missouri. This case is about nothing less than the continued viability of the three-tier system, a regulatory approach that the Supreme Court and this court have both blasted... Counsel, that's just not true. I mean that's such an exaggeration and I'm not going to let you start with that. Well, Your Honor, I mean even in... We have no idea whether whether Granholm applied to Missouri's three-tier would mean the death knell of it. I can... I'm sure there are some powerful lobbyists in Missouri who would consider it a death knell. That doesn't... That's almost irrelevant. But, Your Honor, I was referring to the three-tier system in general, the regulatory framework that exists in many states. Well, Judge Sutton's opinion in the Levinloff case addressed this point on the head and it said that it would gut the three-tier system if out-of-state direct sales were allowed. And if I may explain the reason why is out-of-state retailers are not subject to Missouri's regulations on retailers, but more importantly the alcohol that they sell never passes through the three-tier system. The plaintiffs are granted the relief that they seek here. If I frankly don't care about the three-tier system, I care about harmonizing the 21st Amendment and the Commerce Clause. Well, and I... As confirmed in Tennessee 1, the Commerce Clause, the three-tier system, which is absolutely a valid way for a state to accomplish its 21st Amendment objectives, must yield or be may or may not look differently at the end of that if the three-tier system has inherently been disrupted and replaced by the modern economy. Well, Your Honor, I'm not sure that the modern economy can trump the 21st Amendment. And what the Supreme Court has consistently recognized is, although the Commerce Clause trumps the 21st Amendment, interstate discrimination cannot be justified by 21st Amendment principles. The 21st Amendment, it's true, cannot give states a get-out-of-jail-free card to wantonly discriminate against out-of-state interests. Missouri would concede that. But in harmonizing the two provisions, the Supreme Court, the Sixth Circuit, this Court, have all recognized that the 21st Amendment indisputably gives states more leeway to regulate the liquor industry than other industries. So the starting place can't be just ordinary dormant Commerce Clause analysis. It's something different. Here, we don't even need to get into ordinary dormant Commerce Clause analysis because the state does not discriminate against out-of-state actors. This is clear by the fact that there are non-resident wine retailers like Total Wine and Walmart that already operate within the state of Missouri. And I think a lot of the confusion is raised by a blurring by the plaintiffs between residency and physical location requirements in the state. There are many non-resident, unlike in the Tennessee case, there are many non-resident retailers who currently operate within the state of Missouri and who are able to sell wine from a storefront and also deliver wine to customers because they comply with Missouri's licensing requirements. The opposing counsel, I think, stated the most important fact in his opening remarks. He said that his clients want to run a purely Internet business. But no company in Missouri, whether they're Missouri residents or out-of-state companies, are allowed to run a pure Internet business. All of them are required to operate a storefront here in the state. And as the Supreme Court made clear in the Exxon case, the Dormant Commerce Clause does not protect a chosen way of doing business. It doesn't allow Sarasota Wine to run an Internet business if that same opportunity is not available to Missouri retailers. It would actually, the court grants relief, would put out-of-state retailers at distinct advantage over in-state retailers. And the Dormant Commerce Clause, even apart from the I would also like to briefly address, Judge Loken, your question about the burden. The Fifth Circuit in the Walmart case that we cited in our brief makes clear that the burden to show discrimination rests on the party challenging the validity of the statute. So plaintiffs here have an initial burden of showing that there is, in fact, discrimination. Hold on. I'm sorry. The Fifth Circuit trumps the U.S. Supreme Court. I was reading the U.S. Supreme Court. I don't care what the Fifth Circuit says. I follow the Supreme Court. Sure. So the Fifth Circuit quoted the Supreme Court in that opinion. Another Supreme Court opinion that states a similar idea is the North Dakota case. It says that liquor control laws are entitled to, quote, a strong presumption of validity. But the Granholm quote that you cited was only triggered after discrimination was reached. That's right. Once discrimination is I agree with that. I agree with that. But if there's discrimination, if there's no way to deliver, well, a locational, mandatory locational requirement that is limited, that benefits, that discriminates in favor of in-state retailers is discriminatory under the Commerce Clause, and it may be justifiable. But the question is whether you have to justify it. Just to be clear, the state's position is that it does not facially discriminate against out-of-state retailers. I understand that. Many out-of-state retailers, in fact, operate here. By spending a lot of money in order to have a physical presence in Missouri that some specialty retailers can't afford. So they are financially barred from soliciting sales in Missouri. I'm not sure that their complaint alleges anything along those lines, that they're unable to comply. And I would note also that the Walmart case from the Fifth Circuit, Wine Country from the Fifth Circuit, the Orion case from, which is an Eastern District of California case, the Arnold's Wine case, all found that there was no discrimination against non-residents with similar requirements in place. Another factor in considering whether discrimination exists is whether companies are similarly situated. And the state argues that resident retailers who run retailers here, as well as non-resident retailers like Total Wine, are submitting to the regulation of the state. Whereas, a unlicensed company who operates out-of-state, like Sarasota Wine, is not similarly situated. The Levimoff case recognized that distinction and cited a number of other cases that have as well. And this is, again, all about the threshold inquiry as to whether they're actually facing any kind of discrimination. If the court were to find that there were discrimination, at that point the burden would shift to the state to show that the predominant effect advances the legitimate state interest rather than economic protectionism. But there's not even a claim that's fleshed out that the state is engaged in protectionism. And in fact, the record available as cited heavily in our response brief demonstrates the state advances a number of legitimate interests. Now we're hearing a Rule 56 appeal argument. That's not the issue before us. No, Your Honor. The court can take judicial notice of fact-finding in similar cases that have clearly established this, including Southern Wines, which, while I would agree with the opposing counsel... Wait a minute. Judicial notice of what? Of no discrimination? Well, the Southern Wine case did analyze whether there was a protectionist interest, and it dismissed that argument, partially because plaintiffs had waived it. But Judge Colleton, in that opinion, did go on to discuss what the purpose of the statute was and how it was advanced by enshrining a three-tier system and requiring that alcohol must flow through the... You know, where did we get... Now we're into protectionism and so forth. I mean, these are all arguments. The issue is whether Tennessee Wine undermines the Eighth Circuit case law that the district court relied on in saying it didn't even plead a case. And you're saying because Walmart can do it, there's no discrimination against Sarasota. You know, that's so preposterous on its face to me, a former antitrust lawyer, that I can't... You know, that's not a 12b6 argument. Well, to be clear, the district court did not rely solely on Southern wines. The court recognized that all alcohol sold in the state by retailers must pass through the three-tier system. And again, if Sarasota gets the relief that they seek, they will not be subject to those same constraints. The wine that they purchased does not come from Missouri wholesalers. And they would be able to directly ship that in to Missouri without going through the regulatory testing page. Isn't that an argument for another day? Isn't the question here about the sufficiency of the pleading? It is about the sufficiency. Yeah, I mean, and so, I mean, and aren't those determinations in the end at least, if not fact-specific, they're fact-dependent, aren't they? I mean, it depends on the claims that a plaintiff has raised. And the state is arguing that the claims that have been raised and after the district court already gave plaintiffs leave to amend their complaint are insufficient to start out a claim. Because what they're seeking to do effectively is to gut the three-tier system. Maybe I could briefly also address the standing points that we've raised in our brief, because that's an independent basis that the court's analysis. Plaintiffs have failed to establish all three elements of standing, injury in fact, redressability, and causation. I think the most glaring defect relates to causation and redressability, as there are a variety of unchallenged regulations that independently prohibit the desire of wine sales. That includes both Florida laws and Missouri laws that require retailers in each state to purchase from local wholesalers. So, even if the court were to grant, ultimately grant the relief that plaintiffs seek, allow them to have a retail license, they still couldn't transport the wine that they have in Florida from their inventory there into Missouri. Plaintiffs don't challenge these other regulations, although they do attempt to... I have to point out that a complaint does not fail under Iqbal and Twombly because the relief prayed for is an overreach. I'm not claiming that the relief they prayed for is an overreach, I'm claiming that it's an underreach. They're only challenging... You're claiming they can't get the relief prayed for, therefore the complaint's no good, and that's not Rule 12b6 law. No, if the relief that they seek is insufficient, and we've cited a variety of cases in our briefs, Madsen is maybe the best case, but there are also a variety of Eighth Circuit cases that reach the same question. If a plaintiff prays for relief that would be, even if were granted, would be insufficient to give them what they're actually after here, the desired wine transactions, that is a failure to state a claim on its face. If the claim is that a Missouri statute or regulation applied to me violates the U.S. Constitution, period, that states a claim on the U.S. Constitution, period. If the fact that the relief that would be fashioned if that claim was proved is very murky at best, that doesn't mean there's no... It's not that it's very murky, it's that it's impossible. They cannot possibly... No, no, no, I can write an order that says you can't apply that right against this person. Your Honor, that would be well beyond the scope of the complaint because they didn't ask for that relief. They never mentioned wholesalers in the complaint whatsoever. No, no, I don't care about wholesalers. You care about wholesalers. You care about wholesalers. I just care about the law as it's written and they have a challenge about provision of the law. Say this again? What? You're very hard for me. It's very hard for me to hear you. The fact that Florida law may require something that they're not doing is irrelevant to this Missouri case. Both Florida law and Missouri law require them to make purchases from wholesalers. This court in Fernbeck... Even if they're a producer? We're not... The case isn't about producers, it's about retailers. There is a separate license that allows certain small producers, wine producers, to be able to ship and stay. But they are prohibited under both Florida and Missouri law from consummating the transactions that they claim they want to make, which leaves them in a position that even if they're awarded the relief that they seek, they'll be unable to complete the wine transactions that they claim they want to make. And what case in your view establishes that destroyed standing? Puckett is a very clear case from the Eighth Circuit. That case involved the failure to request a school to reinstate busing. Even if it was possible, the plaintiffs hadn't done so. I'm sorry. Fernbeck and Puckett both established that. Your Honor, I see that my time has expired. State would ask that this court affirm the grant of dismissal on basis of standing or alternatively for failure to state a claim. Thank you. Thank you, counsel. For rebuttal, Mr. Epstein. Thank you. Let me just clarify the complaint in the rebuttal to Worthy Counsel's argument. In our complaint, we said if one was available, Sarasota will attempt to get a license in the state of Missouri. If you look at sections 311.220 and 311.240, there are the residency and physical presence requirements that would prevent Sarasota Market from currently getting that license. We have asked in our complaint for an injunction requiring the state to find a way to allow Sarasota Market to ship wine. That takes care of the wholesaler argument. Sarasota Market gets its wine through Florida wholesalers that have gone through the same regulatory process in Florida that retailers in Missouri would go through and the wholesalers in Missouri would go through. We have also alleged in our complaint that there is economic protectionism. If there are no further questions, I would rest and ask that the case be remanded. Thank you, counsel. Interesting case. It's been well argued. All you have to read is the disagreement between the grand home majority and the grand home dissent about the history of pre-18th amendment liquor licensing to know that this is not an easy subject and we will take it under advisement and do our best with it.